**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **Crim. No. SAG-23-269** |
| | * | |
| **REGINALD DAVIS,** | * | |
| | * | |
| Defendant. | * | |
| | ******* | |

**GOVERNMENT'S OMNIBUS MOTION FOR
_IN LIMINE_ RULINGS FROM THE COURT**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 3

BACKGROUND ....................................................................................................... 3

    A.  Procedural History ......................................................................................... 3

    B.  The Charged Conduct ..................................................................................... 3

LEGAL STANDARD................................................................................................ 7

ARGUMENT ............................................................................................................ 8

I.     The Court Should Preclude The Defendant From Introducing Evidence And Argument Concerning Alleged Negligence By The Victim Lender, Loan Processors Or The SBA. . 8

II.    The Court Should Preclude Evidence And Argument Regarding Charging Decisions or Selective Prosecution of the Defendant. .......................................................... 11

III.   The Court Should Preclude The Defendant From Offering Or Eliciting Testimony About Personal Factors Unrelated To The Charged Offenses.................................... 12

IV.   The Defendant Should Be Precluded From Introducing Purportedly Self-Exculpatory Statements Without Testifying. ..................................................................... 14

V.    The Court Should Admit Evidence Of Inextricably Intertwined Acts By The Defendant Or, In The Alternative, Admit The Evidence Under Federal Rule Of Evidence 404(b). . 15

    A.  Legal Standard ............................................................................................. 15

    B.  Noticed Evidence ......................................................................................... 17

CONCLUSION........................................................................................................ 20

## **INTRODUCTION**

In advance of the July 14, 2025 trial against Defendant Reginald Davis, the United States of America respectfully seeks the following *in limine* and/or preliminary rulings from the Court:

1. To preclude the Defendant from introducing evidence and argument concerning alleged negligence by the victim lender and/or the U.S. Small Business Administration ("SBA");

2. To preclude evidence and argument regarding charging decisions or selective prosecution of the Defendant;

3. To preclude the Defendant from offering or eliciting testimony about personal factors unrelated to the charged offenses;

4. To preclude the Defendant from introducing purportedly self-exculpatory statements without testifying; and

5. To admit evidence of inextricably intertwined acts by the Defendant or, in the alternative, to admit the evidence under Federal Rule of Evidence 404(b).

## **BACKGROUND**

### A.  Procedural History

On August 3, 2023, a Maryland federal grand jury indicted the Defendant, Reginald Davis, on three counts: wire fraud, in violation of 18 U.S.C. § 1343, and two counts of transactional money laundering, in violation 18 U.S.C. § 1957. ECF No. 1. The Indictment charges the Defendant with submitting a fraudulent COVID-19 relief-related loan application and using a portion of those funds to impermissibly repay his nonprofit's outstanding non-COVID related debt. Following the Defendant's initial appearance on August 9, 2023, the Court released the Defendant on conditions. ECF No. 9. Defendant's jury trial is currently scheduled for July 14, 2025.

### B.  The Charged Conduct

The conduct at the core of the Indictment is the fraudulent Paycheck Protection Program ("PPP") loan that the Defendant obtained as the interim Chief Executive Officer of the nonprofit Strong City Baltimore. The PPP was one source of emergency financial assistance authorized by the federal government during COVID-19 pandemic. Essentially, it allowed small businesses to obtain forgivable loans for job retention and certain other expenses.

To obtain a PPP loan, a qualifying business needed to electronically submit a PPP loan application, which was signed by an authorized representative of the business. The applicant of a PPP loan was required to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the applicant needed to state its: (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. Businesses and non-profits were able to take out first and second draw PPP loans.

PPP rules and regulations required recipients to use PPP funds only for specified permissible expenses. Relevant to this case, permissible expenses for second draw PPP loans included payroll costs, interest on mortgages, rent, utilities, covered operations expenditures, covered supplier costs, and covered worker protection costs. Using PPP loan proceeds to satisfy the principal of debt incurred before February of 2020 was not permissible under PPP rules. In the second draw PPP application, the business' authorized representative needed to acknowledge and certify that the requested PPP loan proceeds would be used permissibly. Specifically, the applicant certified that:

- "All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules."

- "The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as

specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

- "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law[.]"

The evidence at trial will demonstrate that without these certifications, PPP lenders would not process or approve a PPP loan application.

The PPP loan application was processed by a participating financial institution (the lender). If a PPP loan application was approved, the participating financial institution would fund the PPP loan using its own monies, which were guaranteed by the SBA. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on the permissible expense items within a designated period and used a certain percentage of the PPP loan proceeds on payroll expenses.

As alleged in the Indictment, the Defendant began working at Strong City in November 2019 before becoming the interim CEO at the nonprofit in April 2020. ECF No. 1, ¶ 4. Prior to, and continuing through, the Defendant's tenure, Strong City served as the "fiscal sponsor" to manage the finances of other non-profits. The Indictment details Strong City's mismanagement of its client's funds, including assets deposited by the Loeys Dietz Foundation/Marfan Foundation.[1] *Id.* ¶¶ 19-28.

---

[1]    The Loeys Dietz Foundation originally joined Strong City's fiscal sponsorship program. While it was a Strong City project, Loeys Dietz merged with the Marfan Foundation. The non-profit is referred to as Non-Profit 1 in the Indictment.

In April 2020, the Defendant submitted a first draw PPP application on behalf of Strong City. PNC Bank approved that first draw application, and Strong City received a $1.2 million PPP loan. The evidence at trial will demonstrate that Strong City used those funds for permissible purposes and the loan was ultimately forgiven in 2021. This first draw PPP loan is not charged in the Indictment.

The Indictment alleges that between January 2021 and April 2021, the Defendant fraudulently obtained a second draw PPP loan on behalf of Strong City from PNC Bank, and then impermissibly used those funds to cover Strong City's shortfalls owed to fiscally sponsored organizations, including the Loeys Dietz Foundation/Marfan Foundation. *Id.* ¶¶ 33-54. The Defendant signed six PPP applications on behalf of Strong City between January 2021 and March 2021. *Id.* ¶¶ 39-40. The final application, signed March 1, 2021, sought $1.4 million dollars and was approved on March 13, 2021. *Id.* ¶ 40, 43. Two days later, in reply to an email chain discussing the approval of the loan, the Defendant emailed a Strong City employee: "In anticipation of the funds, let's plan to discuss the expenses proposed to be paid and the timeline. Please put together a priority list. Among my list please it should include outstanding AP [accounts payable], outstanding rent and CAM, Marfan Foundation, and board member loans." Payments for debt settlement with the Loeys Dietz Foundation/Marfan Foundation were not an allowable use of PPP funds. *Id.* ¶44.

Evidence at trial will demonstrate that these funds were, in fact, impermissibly used to settle Strong City's debt with fiscally sponsored organizations, including the Loeys Dietz Foundation/Marfan Foundation. On March 16, 2021, the same day the funds were deposited into Strong City's bank account, the Defendant emailed the leadership of the Loeys Dietz Foundation/Marfan Foundation: "We are preparing to process the full liquidation payout for

[Loeys Dietz Foundation/Marfan Foundation]." *Id.* ¶46. On or about March 29, 2021, a Strong City employee signed an agreement with the Loeys Dietz Foundation/Marfan Foundation, stating that "both parties agree to a final balance amount of $609,633.38 due from Strong City Baltimore. Strong City Baltimore and [Loeys Dietz Foundation/Marfan Foundation] also agree that this balance corresponds to the final amount entrusted to Strong City Baltimore in its role as fiscal sponsor." *Id.* ¶51. On or about April 1, 2021, $609,633.38 in funds was transferred from Strong City to the Loeys Dietz Foundation/Marfan Foundation. Neither the Defendant nor Strong City informed the Loeys Dietz Foundation/Marfan Foundation that these funds were the proceeds of a PPP loan, or that there were any restrictions on the use of funds. *Id.* ¶ 52.

Count One of the Indictment charges the Defendant with executing a scheme to defraud and knowingly causing to be transmitted the $1.4 million wire of second draw PPP funds from PNC to Strong City's account. Counts Two and Three charge the Defendant with transactional money laundering related to two transfers of the criminally derived PPP funds between Strong City's bank accounts.

## LEGAL STANDARD

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question." *Hunt Valley Baptist Church, Inc. v. Baltimore Cty., Maryland*, No. CV ELH-17-804, 2018 WL 2717834, at *7 (D. Md. June 6, 2018) (quoting *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)). Typically, pretrial motions *in limine* seek to exclude prejudicial evidence before it is offered at trial. *See Changzhou Kaidi Elec. Co., Ltd. v. Okin Am., Inc.*, 102 F. Supp. 3d 740, 745 (D. Md. 2015) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). These motions help to streamline a case by allowing the Court to avoid "lengthy argument at, or interruption of, the trial." *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400,

1401 (D. Md. 1987); *see also Changzhou Kaidi*, 102 F. Supp. 3d at 745 ("[Motions *in limine*] are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'") (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013)).

Motions *in limine* further promote judicial efficiency by preserving the issues raised for appeal and eliminating the need for parties to renew their objections at trial, "just so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it." *United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996); *see* FED. R. EVID. 103(a); *cf.* FED. R. EVID. 103(a) advisory committee's note to 2000 amendment (acknowledging that Rule 103(a) "applies to all rulings on evidence . . . including so-called 'in limine' rulings"). Rulings on these motions fall within the Court's "broad discretion." *Kauffman v. Park Place Hospitality Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012); *see also United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (noting that evidentiary rulings fall within a trial court's discretion). *United States v. Wall*, No. CR SAG-19-0500, 2022 WL 1268061, at *1 (D. Md. Apr. 28, 2022).

## ARGUMENT

I.    **The Court Should Preclude The Defendant From Introducing Evidence And Argument Concerning Alleged Negligence By The Victim Lender, Loan Processors Or The SBA.**

The Court should exclude any evidence and/or argument by the defense relating to alleged negligence by PNC Bank, the SBA, and others responsible for approving and distributing the loan the Defendant fraudulently obtained. As explained below, PNC Bank and the SBA are the victims of the Defendant's fraudulent scheme. Any evidence relating to victim negligence is irrelevant to the question of the Defendant's guilt and inadmissible as a defense.

It is no defense to fraud to "blame the victim," just as it is no defense to burglary charges that the victim left his front door unlocked. "The Fourth Circuit has held that evidence of a fraud

victim's negligence or lack of diligence is not a defense" to fraud. *United States v. Gaver*, Crim. No. RDB-17-640, 2018 WL 3475455, at *2 (D. Md. Jul. 19, 2018) (citing *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000)). "The susceptibility of the victim of the fraud . . . is irrelevant to the analysis: 'If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright.'" *Colton*, 231 F.3d at 903; *accord. United States v. Brown*, 820 F. App'x 191, 197 (4th Cir. 2020) ("A victim's perception of the scheme to defraud is irrelevant to whether the defendant intended to defraud the victim.")

Even knowledge or complicity on the part of any individual bank employee would also not be a defense to fraud. *Gaver*, 2018 WL 3475455, at *2; *see also United States v. Vinson*, 852 F.3d 333, 351 (4th Cir. 2017) ("That [three bank officials] were aware of all the loan terms is not a valid defense for [the defendant] on the bank fraud conspiracy charge, in that such bank officers were part and parcel of the conspiracy to both defraud the banks and obtain bank funds by false and fraudulent pretenses."); *United States v. Jimenez*, 513 F.3d 62, 74 (3d Cir. 2008) ("[I]t is not a defense to the charge that an [account holder] colluded with [a bank officer] to commit bank fraud. It is the financial institution itself—not its officers or agents—that is the victim of the fraud proscribes.").

Courts have routinely and consistently excluded such "blame the victim" evidence. *See Colton*, 231 F.3d at 903 (4th Cir. 2000); *United States v. Lindsey*, 850 F.3d 1009, 1014 (9th Cir. 2017) (holding that a lender's negligence "does not mean lenders can be victimized by intentional fraudulent conduct with impunity merely because the lenders were negligent, or even because the lenders intentionally disregarded the information in a loan application"); *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) (en banc) ("[W]hatever role, if any, a victim's negligence

plays as a bar to civil recovery, it makes little sense as a defense under a criminal statute that embraces 'any scheme or artifice to defraud.' A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence."); *United States v. Allen*, 201 F.3d 163, 167 (2d Cir. 2000) (per curiam) ("The victim's negligence in permitting a crime to take place does not excuse the defendant from culpability for [the] substantive offense. . . ."); *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) ("The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct."); *United States v. Moore*, 923 F.2d 910, 917 (1st. Cir. 1991) ("[I]t is not a defense that the bank might have prevented its losses had it better internal controls or procedures."); *United States v. Winkle*, 477 F.3d 407, 418 (6th Cir. 2007) (approving the exclusion of an FDIC report that criticized the bank fraud victim's failure to detect a fraud scheme); *United States v. Thomas*, 377 F.3d 232, 243-44 (2d Cir. 2004) (affirming restrictions on cross of victim; rejecting defendant's argument that victim's foolishness vitiated defendant's fraudulent intent).

Because the issue of whether PNC Bank or the SBA were negligent is irrelevant, the Defendant should be precluded from introducing both evidence and argument designed to prove victim negligence, such as attacking the internal controls of the SBA or PNC Bank. As noted in the regulatory record as cited above, the purpose of the PPP was to approve and distribute funds expeditiously, so the SBA and authorized lenders largely relied on the representations of borrowers on the applications. More fundamentally, even if Defendant could prove lender negligence, it

would not be a defense to the crimes for which he is charged: wire fraud and transactional money laundering.[2]

## II.    The Court Should Preclude Evidence And Argument Regarding Charging Decisions or Selective Prosecution of the Defendant.

The Government moves to preclude the Defendant from introducing evidence and argument regarding the Government's charging decisions. The Government anticipates that the evidence at trial will demonstrate that several individuals, in addition to the Defendant, knew about or were involved in the decisions to (a) apply for a PPP loan for Strong City and (b) spend the proceeds of that PPP loan on Strong City Baltimore's debts to other non-profit organizations. The Defendant may attempt to raise to the jury the fact that he is the only defendant in the court room, and question why the Government has not charged any other individuals. The Court should preclude any such evidence or argument.

As a general matter, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Claims based on the non-prosecution of other individuals are "not a defense on the merits to the criminal charge itself." *See United States v. Armstrong*, 517 U.S. 456, 463 (1996) (analyzing selective prosecution challenge). At trial, the jury will be required to determine whether the Government has proven beyond a reasonable doubt that

--------

[2]      While the Government does not anticipate such an argument, the Defendant should be precluded from introducing evidence that any individual bank employee was complicit in his effort to defraud the bank as such employee complicity would also not be a defense to his guilt in this case. *See Gaver*, 2018 WL 3475455, at *2. Such evidence would only serve to waste valuable time at trial and confuse the jury. *See* FED. R. EVID. 403.

the Defendant committed each of the offenses charged in the Indictment. The question of whether some other individuals could also be charged with offenses related to the same or other conduct has no bearing on the Defendant's guilt or the factual determinations the jury will be asked to make. Evidence related to the Government's charging decisions would, therefore, have no probative value at the Defendant's trial. *See* FED. R. EVID. 401. And even if it did, it would be substantially outweighed by prejudice. *See* FED. R. EVID. 403; *United States v. Henson*, MJM-21-cr-470, Pretrial Conference Transcript, ECF No. 160 (D. Md. July 3, 2024) ("Even if there was an ounce of probative value in [the government's charging decisions], it would be substantially outweighed by the risk of misleading or confusing the jury, unfairly prejudicing the Government's case and wasting time under Federal Rule of Evidence 403"). The Court should thus preclude any such evidence or argument.

## III.    The Court Should Preclude The Defendant From Offering Or Eliciting Testimony About Personal Factors Unrelated To The Charged Offenses.

The Government respectfully requests a ruling precluding the Defendant from offering evidence about familial, financial, or any other similar personal circumstances unrelated to guilt because such evidence is irrelevant to the facts at issue and would instead appeal solely to the jury's sympathies. Specifically, the Government anticipates that the Defendant may attempt to elicit evidence that several of his family members passed away in 2020 and 2021. The Court should bar any such attempt as irrelevant under FED. R. EVID. 401 and unduly prejudicial under FED. R. EVID. 403.

Rule 401 defines relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action." FED. R. EVID. 401; *see also Old Chief v. United States*, 519 U.S. 172, 178 (1997). By contrast, evidence that has "no bearing on the merits of the case" or "on [the

defendant's] honesty or integrity" that "could well cause the jury to be influenced by sympathies" should be excluded. *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991); *see also, e.g., United States v. Levin*, 2016 WL 299031, at *6 (S.D.N.Y. Jan. 25, 2016) (excluding evidence that has a "high likelihood of inappropriately eliciting sympathy from the jury on a matter having no bearing on the merits").

Such is the case here. Respectfully, the Defendant's tragic personal circumstances do not tend to make any material fact more or less probable in this case. They have no bearing on the issues at trial. For example, the Government anticipates that the Defendant may specifically wish to raise the death of his brother, who passed away around the time the Defendant was directing that Strong City's second draw PPP loan—the loan at issue in this case—be spent on repaying Strong City's debts. That loss, while undoubtedly tragic, does not bear on the relevant issues in this case: whether the Defendant submitted the relevant PPP application, whether he did so knowing that using the PPP funds to repay Strong City's debts was impermissible, whether did so with the intent to defraud—among other issues. Rather, eliciting testimony of this kind would serve primarily one inadmissible purpose: to appeal to the jury's sympathy. The Defendant should thus be precluded from doing so. *See, e.g.*, *United States v. Edwards*, 101 F.3d 17, 20 (2d Cir. 1996) (approving district court's decision to prohibit any argument in support of jury nullification); *United States v. Mejia*, 2016 WL 6662265, at *2 (S.D.N.Y. Nov. 10, 2016) (precluding evidence of defendant's personal circumstances as "irrelevant to the merits of this case," and even if relevant, "its presentation to the jury would be highly prejudicial while lacking any probative value").

Even if any of the Defendant's personal tragedies were relevant to his criminal charges—which they are not—any potential probative value would be substantially outweighed by the unfair

prejudice of such evidence. *See* FED. R. EVID. 403 advisory committee's notes ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). Courts routinely find that such evidence is an impermissible "effort to evoke the jury's sympathy toward [the defendant] by introducing an account of [the defendant's] misfortunes." *United States v. De Peri*, 778 F.2d 963, 973 (3d Cir. 1985) (excluding proffered evidence that Defendant's child had died); *see also Tardif v. City of New York*, 991 F.3d 394, 409 (2d Cir. 2021) ("the probative value of any additional background testimony is substantially outweighed by the danger of unfair prejudice . . .because of juror sympathy and by the additional time that would be necessary"); *Mahmood v. Narciso*, 549 F. App'x 99, 101 (3d Cir. 2013) (affirming exclusion of evidence relating to traffic collision "beyond a simple description" because relevance of further description was "outweighed by the potential prejudice of inciting sympathy from the jury").

Accordingly, references or the eliciting of testimony about the defendant's personal factors—including the deaths of family members—should be precluded.

## IV.    The Defendant Should Be Precluded From Introducing Purportedly Self-Exculpatory Statements Without Testifying.

The Defendant should not be allowed to introduce his own out-of-court statements without testifying. While the Defendant's out-of-court statements are not hearsay when offered against him by the Government, those statements are inadmissible hearsay when offered by the Defendant without testifying. *See United States v. Rich*, 2024 WL 2396706, at *5 (D. Md. May 23, 2024) (defendant's own exculpatory out-of-court statements barred as hearsay); *United States v. Davis*, 75 F.4th 428, 437 n.9 (4th Cir. 2023) ("To be sure, had the exculpatory firearm comment been introduced by the government at trial, it would not be hearsay under Rule 801(d)(2) (providing that statement by party-opponent is not hearsay). On the other hand, if Davis had sought to

introduce the comment in the defense case, it would be hearsay and Rule 801(d)(2) would not apply.")

Moreover, the rule of completeness as codified in Federal Rule of Evidence 106 does not permit the Defendant to introduce purportedly self-exculpatory hearsay simply because the Government admits other statements of the Defendant through its witnesses. Precedent is clear: Rule 106 "does not . . . render admissible the evidence which is otherwise inadmissible under the hearsay rules.'" *United States v. Davis*, 75 F.4th 428, 436 (4th Cir. 2023) (quoting *United States v. Lentz*, 524 F.3d 501, 526 (4th Cir. 2008) (alterations in original)). Neither does Rule 106 "require the admission of self-serving, exculpatory statements made by a party which are being sought for admission by that same party." *United States v. Hassan*, 742 F.3d 104, 134 (4th Cir. 2014).

Accordingly, the Court should preclude the Defendant from introducing purportedly self-exculpatory statements without testifying.

## V. The Court Should Admit Evidence Of Inextricably Intertwined Acts By The Defendant Or, In The Alternative, Admit The Evidence Under Federal Rule Of Evidence 404(b).

The Government seeks a ruling admitting evidence of certain acts by the Defendant as either (a) inextricably intertwined with the charged conduct and therefore admissible without notice pursuant to Federal Rule of Evidence 4040(b); or (b) extrinsic but admissible for 404(b)-authorized purposes.

### A.  Legal Standard

Rule 404(b) governs evidence involving "Other Crimes, Wrongs, or Acts." In the Fourth Circuit, however, a "Rule 404(b) inquiry . . . applies only to evidence of other acts that are 'extrinsic to the one charged.'" *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) (quoting *United States v. Chin*, 83 F.3d 83, 87 (4th Cir. 1996)). "Acts intrinsic to the alleged crime

do not fall under Rule 404(b)'s limitations on admissible evidence. . . . Evidence of uncharged conduct is not 'other crimes' evidence subject to Rule 404 if the uncharged conduct arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial." *Basham*, 561 F.3d at 326 (quoting *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008)). "Other criminal acts are intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *Chin*, 83 F.3d at 88 (citation and internal quotation marks omitted). Stated differently, "Evidence is intrinsic if it is necessary to 'provide context to the criminal charges.'" *Basham*, 561 F.3d at 326 (quoting *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007)).

In contrast, evidence of extrinsic uncharged conduct is governed by Rule 404(b). It provides that:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(b) follows "a so-called 'inclusionary rule' which admits all evidence of [uncharged conduct] relevant to an issue in trial, except that which tends to prove only criminal disposition." 2 J. Weinstein and M. Berger, Weinstein's Evidence, ¶ 404[08]; *see also United States v. Briley*, 770 F.3d 267, 275 (4th Cir. 2014) ("Rule 404(b) is a rule of inclusion."). "To be admissible under Rule 404(b), evidence must be '(1) relevant to an issue other than [defendant's] character; (2) necessary; and (3) reliable.'" *Siegel*, 536 F.3d at 317 (quoting *United States v. Wells*, 163 F.3d 889, 895 (4th Cir. 1998)). Such evidence "is necessary when it is probative of an essential claim or an element of the offense, or when it furnishes part of the context of the crime." *United States v. Faulls*, 821 F.3d 502, 508 (4th Cir. 2016). And it is reliable for purposes of Rule 404(b) "unless

it is so preposterous that it could not be believed by a rational and properly instructed juror." *Siegel*, 536 F.3d at 319 (quoting *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996)).

    B.  <u>Noticed Evidence</u>

      The Government seeks to introduce evidence—including applications, statements, documents, meeting minutes, and testimony—regarding the Defendant's involvement in obtaining and using Strong City Baltimore's first draw PPP loan. The Government anticipates that the evidence will show that the Defendant submitted a first draw PPP application on behalf of Strong City Baltimore on or about April 7, 2020, that PNC Bank approved that first draw loan, and that Strong City Baltimore received that $1.2 million loan. This occurred approximately a year prior to the Strong City's second draw PPP loan—the loan that led to the charges in this case.

      The evidence will also demonstrate that the Defendant took specific actions to ensure that this *first draw PPP loan* was used for permissible expenses under PPP rules and regulations—steps that were not taken for the subsequent loan. For example, the Defendant sent emails to subordinates explaining that the first draw PPP could be used only on allowable expenses—including payroll. Evidence will also show that Strong City and the Defendant segregated this PPP loan in its own account and used the loan on permissible expenditures—primarily payroll. Witness testimony and email evidence will also demonstrate that the Defendant discussed internally and represented to certain fiscally sponsored organizations that they were ineligible to receive the PPP funds that Strong City received since providing those organizations with funds would have been impermissible under the law. For example, when certain fiscally sponsored organizations published an op-ed complaining about not receiving PPP funds, the Defendant drafted a press release in response stating that Strong City's "use of these funds was consistent with the federal

program's intent to cover payroll, rent, and other qualifying expenses. . . . Projects exiting our fiscal sponsorship program . . . were ineligible to access the PPP funds."

Evidence of any applications Defendant submitted for CARES Act relief, even if they are not charged in the Indictment, are intrinsic to the Defendant's fraudulent scheme and therefore admissible. For one, the first draw PPP loan will be a key part of the Government's evidence regarding Strong City Baltimore's poor financial state—the motive behind the Defendant's fraudulent scheme to obtain and misuse Strong City's second draw PPP as charged in the indictment. *See, e.g.,* Indictment, ECF No. 1 at ¶ 32. Second, it explains why Strong City was even eligible to apply for a second draw PPP loan. Under PPP rules, a second draw loan was only available if a borrower had already expended PPP funds previously received. The Defendant certified to that in the second draw PPP loan application. Moreover, evidence of the first draw PPP loan provides the necessary context to the Defendant's involvement in obtaining Strong City's second draw PPP loan: the charged PPP loan was not the Defendant's first exposure to PPP loans and the corresponding rules and regulations. He was aware of and previously abided by those rules. To convict the Defendant, the Government must prove that he was knowing and willful participant in the fraud. Evidence related to his knowledge and prior conformance with PPP rules goes directly to the elements of the offense. *See United States v. Zelaya*, 908 F.3d 920, 928 (4th Cir. 2018) ("Rule 404(b) does not apply to evidence introduced to prove a substantive element of the offense charged."). For all those reasons,, the first PPP loan is "necessary to complete the story of the crime on trial" and should be properly admitted as intrinsic evidence. *United States v. Sutherland*,

921 F.3d 421, 430 (4th Cir. 2019) (affirming testimony regarding "salacious details" of uncharged lawsuit as properly admitted intrinsic evidence).[3]

Even if this evidence is not intrinsic to the charged scheme—which it is—it is admissible as extrinsic evidence under Rule 404(b). First, it is relevant to issues other than Davis's character: specifically, knowledge and absence of mistake. The Government would offer this evidence to show that the Defendant had knowledge of the PPP rules restricting the use of the funds because, in fact, he had previously complied with those rules. The Defendant had taken careful steps to ensure that PPP funds were used correctly the first time around. This offers a clear contrast to his behavior handling and using the second draw PPP funds, in which none of these same steps were taken.

Second, the evidence is necessary. Knowledge and intent are essential elements of the wire fraud offense with which the Defendant is charged; the Government must prove that the Defendant entered the scheme to defraud PNC Bank and obtain a fraudulent PPP loan knowingly. Indeed, "[p]rior acts that are similar in nature to the charged acts have particular probative value in showing the person's state of mind because 'the prior doing of other similar acts . . . is useful as reducing the possibility that the act in question was done with innocent intent.'" *United States v. Hornsby*, 666 F.3d 296, 307–08 (4th Cir. 2012) (quoting *United States v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997)). That is sufficient under Fourth Circuit precedent. *See Siegel*, 536 F.3d at 319 (allowing the

_____

[3]      *See also, e.g., United States v. Washington*, No. 22-CR-187-WJM, 2023 WL 4361354, at *2 (D. Colo. July 6, 2023) (uncharged EIDL and PPP loan applications submitted to were intrinsic evidence); *cf. United States v. Woods*, No. CR422-016-1, 2022 WL 17585789, at *6 (S.D. Ga. Nov. 22, 2022), *report and recommendation adopted*, No. 4:22-CR-16-1, 2022 WL 17584245 (S.D. Ga. Dec. 12, 2022) (denying motion to preclude evidence regarding defendant assisting others with uncharged EIDL and PPP loans and PPP loans for other businesses she owned).

government to introduce crimes outside the indictment as evidence of motive because motive was "an essential element of the § 1512 charge").

Third, the evidence well exceeds the reliability threshold. This evidence will consist of the first draw PPP applications themselves, the Defendant's own emails, and other documentary evidence. This evidence "is in no sense preposterous or unbelievable." *Siegel*, 536 F.3d at 319; *see also Aramony*, 88 F.3d at 1378 (quoting *United States v. Bailey*, 990 F.2d 119, 123 (4th Cir. 1993)) ("evidence is reliable and should be submitted to the fact finder unless it is 'so preposterous that it could not be believed by a rational and properly instructed juror'").

Finally, there is no basis for exclusion of the evidence under Rule 403. For all the reasons discussed above, evidence related to the Defendant's involvement in the first draw PPP loan is highly probative—it is necessary to complete the story, it goes directly to the Defendant's state of mind for the second draw PPP loan, and it demonstrates his understanding of the PPP rules. On the other hand, there is virtually no risk of *unfair* prejudice. Unlike in other contexts where the 404(b) evidence relates to prior crimes or bad acts, here the jury will be presented with 404(b) evidence that the Defendant previously carefully followed the rules. Moreover, the jury will be helped, rather than confused, by hearing evidence of the full story.

## CONCLUSION

For the reasons explained above, the Government respectfully seeks the following *in limine* and/or preliminary rulings from the Court:

1. To preclude the Defendant from introducing evidence and argument concerning alleged negligence by the victim lender and/or the U.S. Small Business Administration ("SBA");

2. To preclude evidence and argument regarding charging decisions or selective prosecution of the Defendant;

3.  To preclude the Defendant from offering or eliciting testimony about personal factors unrelated to the charged offenses;

4.  To preclude the Defendant from introducing purportedly self-exculpatory statements without testifying; and

5.  To admit evidence of inextricably intertwined acts by the Defendant or, in the alternative, to admit the evidence under Federal Rule of Evidence 404(b).


Respectfully submitted,

Kelly O. Hayes
United States Attorney


___/s/_____
Joseph L. Wenner
Ariel D. Evans
Assistant United States Attorneys
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 30, 2025, I caused a copy of the foregoing motion to be filed electronically with the Court and counsel of record using the CM/ECF system .

_/s/_____

Joseph L. Wenner
Assistant United States Attorney